In re ECLIPSE POULTRY CO.

Appeal of PHILLIPS et al.

(Circuit Court of Appeals, Third Circuit. April 11, 1918. Rehearing Denied May 10, 1918.)

No. 2333.

BANKRUPTCY ☞76(1)—PETITIONING CREDITORS—CLAIMS OF.

A firm composed of three members was dissolved on the withdrawal of one, and the two remaining partners formed a second firm, which carried on the business and assumed the debts of the original firm. Thereafter the remaining partners, as such and as individuals, were adjudicated bankrupts. Creditors, who had extended credit to both firms, proved against the second firm their claims against both, and received dividends. *Held*, that such creditors could not, on a petition setting up claims against both firms, secure an adjudication of the original firm and the partner who had withdrawn.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

On petition of the Fairmont Creamery Company and others the Eclipse Poultry Company and John M. Phillips and others were adjudicated bankrupts, and John M. Phillips and others appeal. Order of adjudication reversed.

Elias Sunstein, of Pittsburgh, Pa., for appellants.

N. R. Criss and Stonecipher & Ralston, all of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. On December 5, 1917, the District Court entered an adjudication against "Oliver D. Phillips, John M. Phillips, and E. Park Montague, partners trading as Eclipse Poultry Company, and John M. Phillips, individually," and from this order the pending appeal has been taken. The situation is unusual, as will be seen from the following statement of the facts:

Two partnerships in succession have borne the name of the Eclipse Poultry Company. The first, which is the partnership now in question, we shall call No. 1; it lasted from September, 1913, to December 22, 1914, and was composed of John and Oliver Phillips and Park Montague. On December 22 John withdrew, the firm was thereupon dissolved, and the second firm was formed, also known as the Eclipse Poultry Company, which we shall call No. 2. The partners were Oliver Phillips and Montague, and they continued business until February 18, 1915, when they were adjudged voluntary bankrupts, both as partners and as individuals; the docket number being 7631. Their affairs were duly wound up, their property was distributed, and on September 11, 1915, they were granted a discharge from all provable debts and claims that existed on the date of the adjudication.

Among the creditors that proved their claims were the Fairmont Creamery Company, the Manchester Produce Company, and Weinberg

Bros. & Co. As their filed accounts show, these three had been creditors of No. 1 also to some extent. On December 22, when John Phillips withdrew and No. 1 was dissolved, the Creamery Company was a creditor of No. 1—the following figures are all in round numbers —to the amount of $2,000, the Produce Company was a creditor to the amount of $1,500, and Weinberg Bros. & Co. was a creditor to the amount of $200. Between December 22 and February 18 the Creamery Company became a creditor of No. 2 to the additional amount of $1,500; the Produce Company, to the amount of $1,700, including a note of $400 dated January 25; and Weinberg Bros. & Co., to the amount of $250. But, instead of confining their claims against No. 2 to the debts contracted by that firm for goods obtained after December 22, these creditors proved against No. 2 the whole of their claims against both firms; and we think it sufficiently appears—indeed we do not understand it to be disputed—that this was done because No. 2 had assumed the debts of No. 1, and because these three creditors at least had assented to the assumption. Their filed accounts run without a break against "Eclipse Poultry Company," and in the case of the Creamery Company extend from August 6, 1913, to February 12, 1915; in the case of the Produce Company, from December 9, 1914, to February 11, 1915 (to which the Produce Company added the note of the "Eclipse Poultry Company" dated January 25, 1915); and, in the case of Weinberg Bros. & Co., from December 9, 1914, to January 26, 1915. Moreover the schedules filed by No. 2 list these debts as owing by that firm in substantially the same amounts as the aggregate of the claims against both firms. The claims were proved in their entirety against No. 2, received their share of the assets, and were covered by the discharge.

On May 18, 1915, while the proceeding against No. 2 was pending, the same three creditors filed an involuntary petition against No. 1 (the docket number being 7789), basing their right to petition on precisely the same claims as had already been proved and allowed against No. 2, and setting up as the acts of bankruptcy three preferential payments on January 22, January 25, and February 8, 1915, and a preferential transfer on February 1 by John M. Phillips, as an individual— the dates of all these acts being after No. 1 had been dissolved by the withdrawal of John. On June 1 a jury trial was demanded, but nothing further was done until May 8, 1916, when the petitioning creditors amended the involuntary petition, so as to strike out the request to adjudicate Oliver and Montague as individuals. On October 18 an amended answer was filed, setting up, inter alia, the discharge of No. 2 as a bar to the present proceeding. In May, 1917, the trial was had, a directed verdict was given in favor of the petitioning creditors, and in December the court entered the order now complained of.

This being the situation, we are of opinion that the petition did not furnish the necessary support for an adjudication against No. 1. If the discharge of No. 2 is to be regarded as effective from February 18, 1915, the date of the adjudication, it is clear (at least, in legal intendment) that the debts proved against No. 2 were even at that date to be treated as discharged, and therefore that in May, 1915, the petition

against No. 1 was presented by three creditors, whose claims were not against No. 1 alone, but included also claims against No. 2 that had already been discharged. As we have stated, a mere inspection of the claims shows that a large part of each was contracted after December 22, 1914, and was not provable at all against No. 1, so that only the early part of the accounts could in any event be used against that firm. It is true that the whole of the accounts might be proved against No. 2, for No. 2 had assumed the debts of No. 1 and had its own debts in addition; but the whole of the accounts could not be proved against No. 1, for that firm could not be liable for so much thereof as was contracted by No. 2 after No. 1 had been dissolved. On the papers themselves, therefore, it is apparent that No. 1 could not be liable for a large part of the claims now set up against that firm, and for that reason the claims as a whole should not have been allowed to serve as a basis for the involuntary petition now in question (No. 7789).

Moreover, if No. 2 had assumed so much of the claims as had been originally contracted by No. 1, it remains to be said that this part had already been proved against Oliver and Montague, both as partnership No. 2 and as individuals, and had been discharged at latest on September 11, 1915; so that this part could not be used a second time against Oliver and Montague under the guise of proceeding against them as partners in No. 1. In brief, the claims supporting the petition now before us do not correctly set forth the facts, and we do not see how they can form the necessary foundation for an adjudication. Each claim consists of two parts; the first part only (if either) being still due by No. 1, while both parts were owing by No. 2, one part by assumption and the other by original contract. With the second part the present bankrupts have nothing to do, and therefore a claim founded on that part, and blended with a claim founded on the first part (which is a claim against a different debtor, and a claim already discharged against No. 2), could not be proved against the bankrupts now complaining. We think this confused proceeding should have been dismissed at the end of the trial.

The order of adjudication is reversed.